J-S46010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SHAWN N. FREEMORE, | |
| Appellant | No. 3107 EDA 2015 |

Appeal from the PCRA Order Entered September 11, 2015
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000258-2009

BEFORE:  BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED AUGUST 03, 2016**

Appellant, Shawn N. Freemore, appeals from the post-conviction court's September 11, 2015 order denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant raises several claims of trial counsel's ineffectiveness. After careful review, we affirm.

The facts underlying Appellant's convictions are unnecessary to our disposition of his claims herein. We need only note that in September of 2011, Appellant and a co-defendant, Ian Seagraves, were tried before a jury for crimes related to the stabbing death of Michael Goucher. On September 21, 2011, Appellant was convicted of first-degree murder, conspiracy to

_____

[*] Retired Senior Judge assigned to the Superior Court.

commit murder, and tampering with or fabricating evidence.[1]  On December 12, 2011, Appellant was sentenced to a term of life imprisonment without the possibility of parole for first-degree murder, and a consecutive, aggregate term of 8½ to 20 years' imprisonment for his other two offenses. He filed a timely notice of appeal, and after this Court affirmed his judgment of sentence, our Supreme Court denied his subsequent petition for allowance of appeal.  *Commonwealth v. Freemore*, 82 A.3d 1074 (Pa. Super. 2013) (unpublished memorandum), *appeal denied*, 82 A.3d 1074 (Pa. 2014).

On April 22, 2015, Appellant filed the timely, *pro se* PCRA petition underlying the present appeal.  Counsel was appointed and filed an amended petition on Appellant's behalf, raising several claims of trial counsel's ineffectiveness.  The Commonwealth filed an answer, and the court conducted an evidentiary hearing on July 6, 2015, at which Appellant's trial counsel, Robin A. Spishock, Esq., testified.  On September 21, 2015, the PCRA court issued an order, and an accompanying opinion, denying Appellant's petition.

Appellant filed a timely notice of appeal, and also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of

---

[1] *See* 18 Pa.C.S. §§ 2502(a), 903, and 4910, respectively.

errors complained of on appeal. Herein, he presents three issues for our review:

A. Was trial counsel ineffective for failing to file appropriate pre-trial motions to exclude the prejudicial evidence collected by the Commonwealth in violation of both the Pennsylvania and United States Constitutions?

B. Was trial counsel ineffective for failing to object to prejudicial and outrageous comments made by the prosecution during its closing arguments?

C. Was trial counsel ineffective for failing to raise appropriate issues on appeal to the appellate courts?

Appellant's Brief at 4 (unnecessary capitalization omitted).

We begin by noting that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Morales*, 701 A.2d 516, 520 (Pa. 1997) (citing *Commonwealth v. Travaglia*, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has directed that the following standards apply:

[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [*Commonwealth v.*] *Colavita*, 606 Pa. [1,] 21, 993 A.2d [874,] 886 [(Pa. 2010)] (citing

*Strickland*[ *v. Washington*, 104 S.Ct. 2053 (1984)]). In Pennsylvania, we have refined the *Strickland* performance and prejudice test into a three-part inquiry. *See* [*Commonwealth v.*] *Pierce*, [515 Pa. 153, 527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. *Commonwealth v. Ali*, 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to prove any of these prongs, his claim fails." *Commonwealth v. Simpson*, [620] Pa. [60, 73], 66 A.3d 253, 260 (2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. *See Ali, supra*. Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Colavita*, 606 Pa. at 21, 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Commonwealth v. King*, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" *Ali*, 608 Pa. at 86–87, 10 A.3d at 291 (quoting *Commonwealth v. Collins*, 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052)).

*Commonwealth v. Spotz*, 84 A.3d 294, 311-12 (Pa. 2014).

In Appellant's first issue, he avers that Attorney Spishock was ineffective for failing to seek the suppression of notebooks seized from Appellant's vehicle during the execution of a search warrant. Appellant contends that the seizure of those notebooks exceeded the scope of the search warrant, as "[n]o mention [was] made anywhere in the body of the

warrant regarding the collection of any notebooks, composition books or other personal items belonging to Appellant." Appellant's Brief at 9-10. Appellant further suggests that the notebooks were not lawfully seized under the 'plain view doctrine,' as they were not "obviously incriminatory[,]" but "only became so upon reading and analysis, which occurred after they were seized." *Id.* at 10; *see also Commonwealth v. Turner*, 982 A.2d 90, 92 (Pa. Super. 2009) (stating that for the 'plain view' exception to the warrant requirement to apply, "the incriminating character of the item must be 'immediately apparent'") (citations omitted).

Interestingly, Appellant makes absolutely no mention of the basis on which the PCRA court ruled that his suppression claim lacked arguable merit. Specifically, the court explained:

> The notebooks in question were obtained during a search of [Appellant's] car on February 12-13, 2009. Return of Service and Inventory, Feb. 23, 2009, p.1. The items to be seized were:
>
>> Any and all items capable of producing sharp force trauma including but not limited to knives, axes, hatchets, cleavers and saws. *Other items to be search[ed] for and seized[:] trace evidence including but not limited to* bodily fluids, *blood*, plasma, saliva, semen, hairs to include head, body and pubic hair; in addition to fingerprint evidence. Clothing evidence such as jackets, shirts, pants, gloves and other clothing. Vehicle ownership information. A mini/small recorder and other items such as wallets, credit card and ATM cards. Items which may have belonged to the victim Michael Goucher.
>
> Appl. for Search Warrant and Authorization, Feb. 12, 2009, p. 1 (emphasis added). The notebooks were found on the dashboard and in the passenger seat of the vehicle. Notes of Testimony, Trial, Vol. III [(9/15/11)], p. 75 …. The officer [who] collected the notebooks testified at trial that some of the pages appeared

to have blood on them. *Id.* at p. 90. Furthermore, the officer collected the notebooks because of the blood on the pages and not their content. *Id.* at 91.

[Appellant's] only argument for this [suppression] claim is that the seizure of the notebooks was outside the scope of the search warrant. [Appellant] has not alleged that the warrant was illegally issued. Furthermore, [Appellant] does not seem to dispute that once seized, the contents of the notebooks were incriminating in nature and subject to the plain view doctrine. [Appellant's Brief] in Supp. Of His [PCRA Petition], p. 4 …. ("[The notebooks] only became [obviously incriminatory] upon reading and analysis, *which occurred after they were seized*."). Thus, we will only analyze whether the notebooks were properly seized within the scope of the search warrant.

"The scope of a lawful search pursuant to a warrant is defined by the object of the search and the places in which there is probable cause to believe it may be found." **Commonwealth v. Taylor**, 771 A.2d 1261, 1265-66 (Pa. 2001) (quotations [and citations] omitted). Search warrants "must describe the items to be seized with specificity." **Commonwealth v. Janda**, 14 A.3d 147, 160 (Pa. Super. 2011) [(citation omitted)]. Additionally, "a lawful search generally extends to the entire area in which the object of the search may be found." **Commonwealth v. Rega**, 933 A.2d 997, 1013 (Pa. 2007) [(citation omitted)].

The warrant at issue in this case authorized seizure of, *inter alia*, "trace evidence including but not limited to … blood[.]" Appl. for Search Warrant and Authorization, Feb. 12, 2009, p.1. Blood evidence could have been anywhere in [Appellant's] car, including on the notebooks. Indeed, the officer who conducted the search testified that the notebooks had blood on some of the pages. [Notes of Testimony, Trial,] Vol. III [(9/15/11)], p. 90. The collection of the notebooks that appeared to have blood on them was well within the scope of this warrant which authorized the seizure of trace evidence, including blood. Thus, [Appellant's] argument that the seizure of the notebooks was outside the scope of the warrant lacks merit and [Appellant's] PCRA claim fails.

PCRA Court Order & Opinion (PCO), 9/21/15, at 5-6.

Appellant does not acknowledge the PCRA court's rationale for finding that his underlying suppression claim lacks arguable merit, let alone provide any argument or legal authority to refute the court's decision that the notebooks fell within the scope of the search warrant because they contained blood evidence. Our review of the certified record confirms that the warrant did, in fact, authorize the seizure of 'trace evidence' including blood, and that the searching officer seized the notebooks because they appeared to have blood on them. *See* Application for Search Warrant and Authorization, 2/12/09 (filed 2/24/09), at 1 (unnumbered) (Docket Entry 12); Receipt/Inventory of Seized Property, 2/12-13/09, at 1 (unnumbered) (Docket Entry 12) (listing "Mead Notebook [with] Blood Stains" and "Black Book [with] Blood Stains"). Because Appellant offers no discussion of why the notebooks would have been suppressed as being seized outside the scope of the warrant, when those notebooks contained trace blood evidence, he has failed to demonstrate that his underlying suppression claim has arguable merit. Accordingly, we agree with the PCRA court that Appellant's first ineffectiveness claim is meritless.

Next, Appellant argues that Attorney Spishock acted ineffectively by not objecting to a remark by the prosecutor during closing arguments. The entirety of Appellant's argument in support of this issue is the following:

> During trial, [the prosecutor] referred to [] Appellant as a, "homicidal [G]insu chef." After objection by defense counsel when such representation was made, [the trial court] agreed that such representation was inappropriate, sustained such objection and told the jury to disregard the comment. When

[the prosecutor] used the exact same phrase in his closing argument, however, no such objection was made. Thus, this inflammatory and prejudicial comment was allowed to be considered by the jury during deliberations without any correction by the [c]ourt.

Had an objection been made by trial counsel, [the court] would surely have sustained such objection, based on his earlier ruling, and it would have provided the jury a chance to be reminded that this phrase was out of bounds. It cannot be predicted with any certainty what effect this might have [had] on the jury, of course, but it is certainly a possibility that the jury might have drawn a negative inference against the Commonwealth[,] which might have led to [] Appellant['s] being convicted of a lesser offense.

Appellant's Brief at 11-12.

Appellant's scant argument, which contains no citation to the record or any legal authority, is inadequate to demonstrate that the PCRA court erred by rejecting this ineffectiveness claim. In doing so, the PCRA court concluded that Appellant failed to demonstrate that he was prejudiced by the un-objected-to remark by the prosecutor:

A review of the record reveals that the [prosecutor] … asked the following question during cross[-]examination of [Appellant]: "You some kind of homicidal Ginzu [*sic*] chef or what?" N.T. [Trial,] Vol. V [(9/19/11)], p. 173.[2] Counsel for Co-Defendant Seagraves … promptly objected "to the

_____

[2] For contextual purposes, just prior to the Commonwealth's question, Appellant testified that he 'blacked out' during the murder, and woke to find himself holding two knives with the victim lying on the ground. **See** N.T. Trial, 9/19/11 (Vol. V), at 172. Because the victim had been stabbed, and a meat cleaver was discovered near the victim's body, the Commonwealth asked Appellant, "And you also happened to have a meat cleaver on you, too?" **Id.** at 173. Appellant replied, "I always carried a meat cleaver on me[,]" **id.**, to which the Commonwealth asked the objected-to question, "You some kind of homicidal Ginzu [*sic*] chef or what?" **Id.**

characterization" and this [c]ourt sustained that objection. ***Id.*** In closing arguments, [the prosecutor] again mentioned this characterization: "And that is why I said something about the homicidal [G]inzu [*sic*] chef because he wakes up, comes to, the victim is there."  N.T. [Trial,] Vol. VII [(9/21/11)], p. 69.  At the time of the comment during closing argument, [the prosecutor] was going through [Appellant's] testimony, pointing out weaknesses and inconsistencies. ***Id.*** at 68-72.

…

Prosecutorial remarks "fall within the ambit of fair comment if they are supported by evidence and they contain inferences which are reasonably derived from that evidence." ***Commonwealth v. Hardcastle***, 546 A.2d 1101, 1109 (Pa. 1988).  Moreover, an improper remark by a prosecutor will only "constitute reversible error [if] the language [is] such that its unavoidable effect would be to prejudice the jury, forming in their minds [a] fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." ***Id.***

Reading [the prosecutor's] remark in context, it seems that he was not re-characterizing [Appellant] as a "homicidal Ginzu [*sic*] chef" but rather was explaining his previous question during cross[-]examination.  While this action may or may not have been improper, it did not prejudice [Appellant].  After closing arguments from both sides, the [c]ourt gave the following instruction:

> An argument by a lawyer is designed to draw your attention to particularized facts which each lawyer for each particular position believes is important and by drawing your attention to those facts allows you to follow a path, if you will, to a particular conclusion or result. *This is an argument.  It is not testimony.*  Neither [the prosecutor] or Mr. D'Andrea or Ms. Spishock have provided any testimonial evidence in the course of this proceeding. They have by argument directed your attention to aspects of the trial either by testimony of witnesses, physical evidence of the case, which they believe have particular importance and significance and want you to consider that in coming to a particular conclusion that they have advanced forward….  [T]hat is what the argument process

> is.  It synthesizes a lot of testimony and evidence in a particularized way and leads to a result.

> N.T. [Trial,] Vol. VII [(9/21/11)], p. 93 (emphasis added).  "A jury is presumed to follow the court's instructions." ***Commonwealth v. Stokes***, 839 A.2d 226, 230 (Pa. 2003) (citation omitted).  Thus, [Appellant's] allegation that "this inflammatory and prejudicial comment was allowed to be considered by the jury during deliberations without any correction by the [c]ourt" is simply unfounded.  [Appellant's Brief in Support of PCRA Petition,] p. 6.  Assuming, *arguendo*, that Attorney Spishock should have objected and did not have a valid reason for not objecting, [Appellant's] claim must still fail because he has not proven that the lack of objection resulted in prejudice.

PCO at 9-11.

Again, Appellant does not explicitly attack the PCRA court's rationale for denying his ineffectiveness claim, or provide citation to any legal authority to support his argument that Attorney Spishock should have objected to the prosecutor's remark, that she had no reasonable basis for failing to do so, or that Appellant was prejudiced by the omission of such an objection.  In any event, the record supports the court's conclusion that Appellant failed to prove he was prejudiced by Attorney Spishock's failure to object.  The first time the prosecutor made the at-issue comment, defense counsel for Appellant's co-defendant objected, and the court sustained that objection.  The at-issue, reiteration of the prosecutor's 3-word remark came in the midst of the prosecutor's lengthy closing argument, ***see*** N.T. Trial, 9/21/11, at 58-91, and at the end of trial that spanned *seven* days.  During that trial, the Commonwealth presented significant evidence demonstrating Appellant's guilt, including Appellant's confession to police that he and

Seagraves planned to kill Goucher, and that the two did so by repeatedly stabbing Goucher with a butcher knife and meat cleaver. *See* N.T. Trial, 9/16/11 (Vol. IV), at 79-83. Appellant's minimal and unsupported argument fails to convince us that the prosecutor's brief, at-issue remark changed the outcome of Appellant's trial.

Finally, Appellant argues that Attorney Spishock was ineffective for not raising these two claims on direct appeal.[3] Clearly, Attorney Spishock could not have raised either of these claims on direct appeal because she failed to preserve them. Specifically, Attorney Spishock did not file a pretrial motion seeking to suppress the notebooks seized from Appellant's car on the basis that their seizure exceeded the scope of the search warrant, and she did not object to the prosecutor's remark in his closing argument. Therefore, Attorney Spishock could not have asserted either of these underlying claims on direct appeal.[4] *See, generally,* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on

---

[3] Appellant also baldly states that Attorney Spishock should have asserted, on appeal, "issues regarding [the] jury charge, inflammatory prosecutorial language, lack of full and complete discovery, and other key issues…." Appellant's Brief at 13. Because Appellant offers no elaboration on the underlying merits of these claims, he has failed to demonstrate that Attorney Spishock was ineffective for not asserting them on direct appeal.

[4] Indeed, Attorney Spishock did *attempt* to raise the suppression claim discussed herein, and this Court deemed it waived. ***See Commonwealth v. Freemore***, No. 1710 EDA 2012, unpublished memorandum at 4-5 (Pa. Super. filed July 23, 2013).

appeal."). Moreover, Attorney Spishock could not have raised, *on direct appeal*, claims that she acted ineffectively by failing to preserve these issues. **See Commonwealth v. Holmes**, 79 A.3d 562, 576 (Pa. 2013) (reaffirming the prior holding in **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002), that, absent certain circumstances, claims of ineffective assistance of counsel should be deferred until collateral review under the PCRA). Consequently, Appellant's final claim is patently meritless.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/3/2016